No. 40,801

Gutting-Greenlease Investment Co., Inc., *Appellant*, v. Kansas Turnpike Authority, *Appellee*.

(347 P. 2d 403)

Opinion filed December 12, 1959.

*Robert R. Irwin*, of Topeka, argued the cause, and *Walter G. Stumbo* and *Mary Schowengerdt*, both of Topeka, were with him on the brief for the appellant.

*Robert M. Cowger*, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Price, J.: This is an appeal by a landowner and arises out of a condemnation proceeding.

The landowner, Gutting-Greenlease Investment Co., Inc., hereafter referred to as plaintiff, owned 359.16 acres of land immediately south of Topeka, being bounded by U. S. Highway 75 on the

west, 37th Street on the north, Adams Street on the east, and a public road on the south known as 45th Street. The Kansas Turnpike Authority found it necessary to acquire a portion of the land for construction of what is known as the South Topeka Interchange. In so doing it took a total of 32.25 acres, including 901 feet of highway frontage.

The court-appointed commissioners made a total award in the amount of $69,046.14. Plaintiff landowner, being dissatisfied, appealed to the district court.

The trial resulted in a verdict in the amount of $60,848, and, in addition, the jury answered nine special questions. Plaintiff's motion for a new trial being overruled, it has appealed.

The jury allowed $52,060 for the 901 feet of highway frontage taken and $8,788 for other land taken. It found the value of the remaining 1216 feet of highway frontage, both before and after the taking of the 901 feet, to be $56,800—in other words, that the remaining highway frontage had not been damaged by the taking of a portion thereof. The jury also found that the reasonable market value of the approximately 320 acres remaining east of the Santa Fe right-of-way, both before and after the taking, was $160,000—in other words, that such remainder had not been damaged by the taking. In answer to question 9, the jury found there had been "no change" in the reasonable market value of the approximately 327 acres remaining immediately after the taking.

From these special findings it will be seen that the jury allowed what it thought to be proper amounts for highway frontage and other land taken, and further found that the remaining highway frontage and remaining land had not been damaged by reason of the taking.

In its brief plaintiff states that the gist of its complaint "is that it was paid a grossly inadequate compensation for its property taken and allowed nothing for severance damages."

Although there are seven specifications of error, most of plaintiff's contentions appear to be that the court erred in its rulings on evidence. No complaint is made as to the court's instructions or concerning special questions given or refused. And neither do we have any question concerning "access" rights or concerning any theory of "unit use" of the property in question. Plaintiff concedes that none of the alleged errors, standing alone, is of sufficient gravity to

require a reversal, but contends that all taken together—they require the granting of a new trial.

Considerable evidence was introduced by both sides, much of it being in the nature of testimony by expert witnesses well qualified to testify as to land values in the area. As usually is the case in matters of this kind, their testimony varied considerably. Perhaps there were a few instances in which, from a purely "technical" view, plaintiff might be considered to have a valid complaint concerning some of the trial court's rulings. From a study of the record, however, it may not be said that any prejudice resulted. Both sides appear to have been given a wide latitude in the introduction of testimony as to values. The jury's special findings were well within the evidence, including those findings that no damage whatever resulted to the remaining highway frontage and other land because of the taking.

In the absence of any complaint concerning instructions it must be presumed the jury was fully and correctly instructed on all issues in the case, including the various elements to be taken into consideration in assessing damages. During the course of the trial the jury viewed the property in question and its special findings clearly indicate that it had a full comprehension of the entire matter.

Various other complaints are made concerning matters occurring at the trial. They have been examined and considered but are found to be without merit and therefore will not be discussed. An examination of the entire record convinces us that nothing approaching prejudicial error occurred at the trial and that the chief complaint appears to be merely that the jury did not allow as much damage as plaintiff thought it was entitled to receive. This, of course, is a "gamble" which every landowner or condemner takes in an appeal from the award of commissioners in a condemnation case.

The special findings and general verdict having been approved by the trial court, and no error of a prejudicial nature being shown, the judgment is affirmed.